IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ENTEGRIS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  1:23-CV-00291 |
| | § | |
| SHANE NUNES, | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

Plaintiff Entegris, Inc. ("Entegris") files this Original Complaint ("Complaint") against Defendant Shane Nunes ("Nunes"), and alleges as follows:

## INTRODUCTION

1.     Entegris has spent significant time and resources securing its place as an industry leader in the global supply of advanced materials and process solutions for the semiconductor, pharmaceutical, life sciences, and other industries. In particular, Entegris has distinguished itself as a producer and direct supplier of chemicals for use in the production of semiconductors. In the last several years, Entegris has expanded its innovative work in this field to include molecule synthesis for a new technology - dry photoresist technology for extreme ultraviolet ("EUV") lithography ("EUV dry resist"), which is intended to be used in the production of next-generation semiconductors.

2.     Entegris' highly confidential work in this area, as well as on other projects and technologies currently in development, are now at immediate risk of disclosure to, and use by, its direct competitor as a result of Nunes' acceptance of a leadership position with Entegris' direct

competitor, Gelest Inc. ("Gelest"), in violation of his noncompetition and nondisclosure obligations to Entegris.

3.      Throughout his employment at Entegris, Nunes was repeatedly and extensively exposed to – and, indeed, helped to develop – some of Entegris' trade secrets and other confidential information (collectively, "Confidential Information"), and he played an integral role in overseeing highly sensitive projects and product development for Entegris in an exceptionally competitive marketplace. Nunes was also a key member of the management team that discussed and assessed Entegris' highly confidential legal and commercial strategies, and he was the face of Entegris to important industry partners and customers of the products that he managed.

4.      Nunes' move to Gelest violates his Restrictive Covenants Agreement For 2020 New Participants in 2010 Stock Plan (the "Restrictive Covenants Agreement") signed on February 4, 2020 with Entegris, which contains, among other restrictive covenants, a reasonably-tailored noncompetition provision prohibiting him from accepting a position at a competitor such as Gelest. A true and correct copy of the Restrictive Covenants Agreement is attached hereto as Exhibit A.

5.      Nunes' employment with Gelest also violates his Employee Agreement (the "Employee Agreement") signed on January 25, 2019 with Entegris, which contains nondisclosure and confidentiality provisions, because he cannot help but use and disclose Entegris' trade secrets and Confidential Information in the course of his new job with Gelest. A true and correct copy of the Employee Agreement is attached hereto as Exhibit B.

6.      Indeed, a mere sentence from Nunes regarding Entegris' research and development efforts concerning EUV dry resist precursor processes or any of Entegris' other product and technology development plans, or an offhand comment suggesting the direction of Entegris' highly

sensitive legal and commercial business strategies to Gelest, would be catastrophic to Entegris' hard-won competitive advantages.

7.      Furthermore, given Nunes' regular contact with important Entegris customers, any outreach to those customers on behalf of Gelest, either direct or indirect, would require Nunes' use of Entegris' goodwill with its customers to the detriment of Entegris, as any reduction or termination of those customer relationships with Entegris would have serious financial repercussions for Entegris.

8.      Entegris seeks injunctive relief to prevent the misappropriation of its Confidential Information, customer goodwill, and breach of its noncompete and nondisclosure agreements with Nunes. Moreover, Entegris seeks damages and attorneys' fees resulting from Nunes' blatant violations of his contractual and statutory obligations.

## THE PARTIES

9.      Plaintiff Entegris is a Delaware corporation with its headquarters and principal place of business at 129 Concord Road, Billerica, Massachusetts, 01821.

10.     Defendant Nunes is a former Director, New Product Development ("NPD") Product Management at Entegris. His last known address is 1137 Kerrwood Way, Leander, Texas, 78641.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Nunes as he lives and worked in this district and expressly consented to jurisdiction of the courts sitting in the county in which he worked for Entegris in the Restrictive Covenant Agreement. Ex. A, ¶ 2.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Entegris' claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836,

*et seq.*, arises under federal law, and this Court has supplemental subject matter jurisdiction over Entegris' remaining state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Entegris' federal DTSA claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy in the present action exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and complete diversity of citizenship exists between the parties, as Entegris is a citizen of Delaware and Massachusetts, and Nunes is a Texas citizen.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(l) because Nunes is the only Defendant in this action, and he resides in the Austin Division of the United States District Court of Texas, Western District.

## FACTUAL ALLEGATIONS

I.     **Entegris' Business and Confidential Information**.

15.     Entegris is a global supplier of advanced materials and process solutions for the semiconductor, pharmaceutical, life sciences, and other industries. Its broad portfolio of products and solutions include: specialty chemistries for semiconductor manufacturing; filtration products that purify gasses and fluids; liquid systems and components that dispense, control, analyze, or transport process fluids; gas delivery systems that safely store and deliver toxic gasses; wafer carriers and shippers that protect semiconductor wafers from contamination and breakage; specialty coatings that provide high-purity surfaces for wear-resistance, corrosion protection, and smoothness; premium graphite and silicon carbide for high-performance applications; and shippers and trays for protecting and transporting disk drive components, to name a few.

16.     Prior to his resignation, Nunes worked within Entegris' Advanced Deposition Materials (ADM) business unit as Director, New Product Development ("NPD") Product Management. One of the projects that Nunes was responsible for supervising was the synthesis of new molecules, and developing enhancements to existing molecules, for use specifically with EUV dry resist technology. EUV dry resist is a new technology used in the production of next-generation semiconductors. This innovative approach extends the resolution, productivity, and yield of EUV lithography, thereby addressing key challenges of advanced logic and DRAM (Dynamic Random Access Memory) products, such as stochastic defectivity, while also employing a more environmentally sound precursor formation process to previous precursor technology.

17.     Notably, Nunes' new employer, Gelest, is not only a direct competitor in the semiconductor molecule synthesis marketplace, but it is also Entegris' sole competition for valuable supplier contracts with a shared customer of EUV dry resist products.

18.     Entegris has researched, developed, accumulated, maintained, and refined its Confidential Information over many years and with great effort and expense. Its Confidential Information includes, among other things, chemistries used in the production of semiconductors. Indeed, Entegris is considered one of the foremost industry suppliers of semiconductor materials and a trailblazer in the synthesis of dry resist precursor chemicals for next-generation semiconductors.

19.     Entegris' Confidential Information includes, without limitation, the specific precursor chemicals offered by Entegris to its direct customers for use in the semiconductor manufacturing process; research and experimentation regarding next generation precursor chemicals for use in semiconductor manufacturing; details concerning the sourcing and inventory of chemicals and other materials for use in precursor chemicals; the processes used in the

development, manufacture, and delivery of such precursor chemicals to Entegris' customers; the specific chemical components and processes involved in the creation of Entegris' other product offerings for use in memory chip manufacturing; testing capabilities; legal and commercial business strategies concerning new product development and market introduction; bills and statements of work with Entegris' customers, suppliers, and partners; work instructions; current and/or contemplated research and development; status and outlook of scientific technologies and other intellectual property under development; intellectual property developed but not yet patented; the target customer base for both existing technologies and products and new technologies and products under development; Entegris' plans to develop technologies and products for its target customer base; costs and margins associated with Entegris' products; and contractual terms and pricing with customers and suppliers.

20.     Entegris' Confidential Information is not generally known to the public, or to other companies or individuals (in Entegris' industry or elsewhere) who could obtain an advantage from it, nor is it shared with third parties absent a nondisclosure agreement.

21.     Accordingly, it would be virtually impossible for a third party to recreate the chemistries necessary to create Entegris' semiconductor materials and EUV dry resist products without access to Entegris' Confidential Information.

22.     Entegris' Confidential Information provides Entegris with a significant advantage over its competitors who do not know or use the Confidential Information and who, if armed with such information, could unfairly compete with Entegris in the market. Disclosure of Entegris' Confidential Information to its competitors would permit them to rapidly develop identical, competing products and technologies and bring them to market or win valuable supplier contracts.

23.     Furthermore, without having to incur Entegris' significant research and development costs or expend the valuable labor and substantial time Entegris has invested into its projects, a competitor could undercut Entegris' prices and engage in a price war with customers and suppliers. Accordingly, the protection of the Confidential Information is paramount to the continued success of Entegris' ability to fairly compete in the semiconductor materials manufacturing industry and the highly specialized EUV dry resist product marketplace.

24.     There is an acute need to protect Entegris' Confidential Information because Entegris is part of a consortium that places Entegris and Gelest in constant and direct competition to be the first to have their EUV dry resist products qualified for end user use, thereby winning potentially valuable long-term, high volume supplier contracts with a shared customer: Lam Research Corp. ("Lam") (a global supplier of wafer fabrication equipment and services to the semiconductor industry).  This engagement with Lam (the "Lam Engagement"), which includes only Entegris and Gelest as suppliers, is structured such that the company that wins each race to molecular qualification for a particular statement of work earns the status of primary supplier (and significant financial incentives), while the losing company is relegated to secondary supplier status. Entegris and Gelest are, therefore, contractually-defined direct competitors, and any unwarranted exchange of information between the two could render years of work and investment fruitless.

25.     The supplier contracts at issue through the Lam Engagement have the potential to generate significant revenues for Entegris: projected up to hundreds of millions of dollars per year. Accordingly, if a competitor – particularly Gelest – obtained Entegris' Confidential Information now, it would have the unfair advantage of being able to circumvent the lengthy and expensive

research and development process and win lucrative supplier contracts for EUV dry resist products as well as valuable market share.

26.     In recognition of the critical need to protect its Confidential Information (particularly from a head-to-head competitor like Gelest), Entegris takes numerous steps to safeguard the secrecy of, and limit access to, such information.

27.     For example, among other things, Entegris:

    a.     requires employees like Nunes to sign employee and/or restrictive covenant agreements containing nondisclosure, noncompetition, and other restrictive covenants;

    b.     has policies that are designed to identify and protect its Confidential Information;

    c.     uses passwords to protect its systems containing Confidential Information and prohibits the sharing of passwords;

    d.     labels documents, emails, and other materials containing its Confidential Information as "Confidential" and requires employees to do the same;

    e.     limits access to Confidential Information to those employees who need to know the information in order to perform their roles for Entegris;

    f.     limits visitor access and requires visitors to sign confidentiality agreements prior to their visits to Entegris;

    g.     requires employees to carry badges in order to access Entegris' facilities;

    h.     terminates employees' access to Entegris' systems immediately upon termination or, in certain circumstances, upon their notice of resignation (as was completed with respect to Nunes' resignation);

i.      requires departing employees to submit written confirmation of their confidentiality obligations (as was required from Nunes' prior to his departure, *see*, Exhibit C, described below);

j.      requires third parties to sign confidentiality agreements prior to Entegris' disclosure of Confidential Information to them;

k.      trains employees on the importance of protecting Entegris' Confidential Information; and

l.      has implemented technological and other physical barriers and other mechanisms that prevent unauthorized access to, and transfers of, its Confidential Information.

## II.      Nunes Resigns and Takes Leadership Position at Direct Competitor Placing Entegris' Confidential Information and Trade Secrets at Risk of Inevitable Disclosure and Use and Violating his Noncompetition Obligations to Entegris

### A.      Nunes' Employment with Entegris and Access to Entegris' Confidential Information and Trade Secrets

28.    Nunes began working for Entegris in January 2019 as a Technology Manager. Over the years, he was promoted through the ranks, entrusted with increased access and internal know-how at each level of employment. Throughout his employment with Entegris, Nunes occupied a position of trust and confidence, with access to sensitive and confidential aspects of Entegris' business.

29.    The series of promotions Nunes received during his time with Entegris is a testament to the commitment and investment Entegris had made in Nunes. In fact, Entegris was sponsoring Nunes' education, as he pursued courses towards his Masters in Business Administration from Harvard University.

30.     At the time of his departure from Entegris, Nunes directly supervised the development of new technologies and enhancements to existing technologies specifically for EUV dry resist precursors, and he was equipped with access to existing technologies at Entegris, emerging technologies, as well as the business strategies surrounding those technologies. Nunes was also responsible for managing the direct communications and relationships between Entegris and its industry partners, customers, and suppliers.

31.     So that he could perform his work for Entegris, Nunes was given extensive access to some of Entegris' Confidential Information, including without limitation information about the specific precursor chemicals offered by Entegris to its direct customers for use in the semiconductor manufacturing process; research and experimentation regarding next generation precursor chemicals for use in semiconductor manufacturing; the specific chemical components and processes involved in the creation of Entegris' other product offerings for use in memory chip manufacturing, including so-called "highly selective silicon nitride etches" for use in semiconductor applications; legal and commercial business strategies concerning new product development in the ADM business unit of Entegris' Specialty Chemicals and Engineered Materials ("SCEM") division; information concerning all new technologies under development within the ADM business unit; marketing strategies for the introduction of new products; bills and statements of work with Entegris' customers, suppliers, and partners; work instructions; current and/or contemplated research and development across Entegris' SCEM division; status and outlook of scientific technologies and other intellectual property under development; intellectual property developed but not yet patented; the target customer base for both existing technologies and products and new technologies and products under development; Entegris' plans to develop technologies and products for its target customer base; costs and margins associated with Entegris'

products; pricing strategies for Entegris' new ADM products; and established contractual terms and pricing with customers and suppliers, as well as those terms currently under negotiation.

32.     In his role as Director, Nunes was also involved in discussions concerning Entegris' highly sensitive legal and commercial business strategies. Due to their sensitive nature, these strategic discussions included only a select few employees with direct insight into the projects and products at issue.

33.     Nunes occupied a senior client-facing role, and he was entrusted with Entegris' third party customers' highly confidential information and trade secrets. Indeed, Nunes was the face of Entegris' new materials business to its customers. Therefore, at the time Nunes resigned from Entegris, he was extremely well-positioned to unfairly divert Entegris' customers using its Confidential Information and goodwill.

**B.      Nunes' Nondisclosure and Noncompetition Obligations to Entegris**

34.     Due to the level of responsibility and access Nunes enjoyed in his role, he was contractually bound to protect Entegris' trade secrets and other confidential information during and after his employment.

35.     On February 4, 2020, in exchange for receipt of restricted stock units and other consideration, Nunes executed the Restrictive Covenants Agreement in which he expressly agreed, among other things, that for a period of one year following the termination of his employment, he would not:

> directly or indirectly, either as principal, agent, employee, consultant, officer, director, stockholder, lender or in any other capacity, undertake planning or preparation for, engage in, or have a financial interest in, any business which is or would be competitive, directly or indirectly, with the current business or planned business of the Company.

Ex. A, Addendum D, ¶ 2.

ORIGINAL COMPLAINT                                                               Page 11

36.     Given that Nunes' role at Entegris had global influence over its product development, the noncompete restriction in the Restrictive Covenants Agreement restricts Nunes' post-employment activities on an international basis.  In this regard, the Restrictive Covenants Agreement provides as follows:

> The non-competition and non-solicitation provisions set forth above are limited to those geographies where I had a material presence or influence during the last twenty four (24) months of employment with Company. However, because the Company offers products for sale on a nationwide and international basis, I recognize that the Company's business is not restricted by geography. Accordingly, I agree that it is fair and reasonable that the non-competition and non-solicitation provisions of this Addendum D apply nationally or internationally, to the extent I had a material presence or influence nationally or internationally during the last twenty four (24) months of employment.

Ex. A, Addendum D, ¶ 4.

37.     Nunes also expressly acknowledged and agreed that,

> . . . any breach by me of any provision is likely to cause irreparable harm to the Company. I accept that monetary damages are unlikely to adequately compensate the Company in such event and hence in the event of any actual or threatened breach of any provision herein, I agree that the Company shall be entitled to injunctive or other equitable relief from any court of competent jurisdiction to enjoin such breach.

Ex. A, ¶ 6.

38.     In addition to the noncompete restrictions in the Restrictive Covenants Agreement, Nunes has robust confidentiality obligations to Entegris.  As a condition of his employment and the benefits that flowed therefrom, on January 25, 2019, Nunes signed the Employee Agreement in which he expressly agreed, among other things, to the following:

> I will not at any time directly or indirectly publish, otherwise disclose or make use of any trade secret, formula, process, method of manufacture, materials used in manufacturing (including specifically plastic materials or blends of plastic materials) record, data, or information of any kind or nature of or possessed by the Company (hereinafter "Confidential Information"), except to the extent necessary to perform my duties as an employee.

Ex. B, ¶ 5.

39.     Nunes also agreed that,

I shall deliver to the Company promptly upon request, or in any event no later than
on the date of termination of my employment, all drawings, papers and records of
any kind relating to the business of the Company, whether or not made by me, that
are in my possession and shall not maintain any copy of same. In addition, I shall
deliver to the Company promptly upon request, or in no event later than on the date
of termination of my employment, all tangible property and assets of the Company
in my possession or otherwise entrusted to my care.

Ex. B, ¶ 4.

C.     **Nunes' Resignation and Post-Employment Plans**

1.     *Nunes Refuses to Disclose the Name of his New Employer at the Time of His
Resignation*

40.     Nunes submitted his voluntary resignation on February 22, 2023, he was asked to

sign a Legal IP/Confidentiality Confirmation Upon Employee Exit form (the "Exit Form") the

same day, confirming his ongoing obligations, including but not limited to, preserving the

confidentiality of Entegris confidential information and trade secrets. A true and correct copy of

the Exit Form is attached hereto as Exhibit C.

41.     Despite putting Entegris' Confidential Information at risk by joining a direct

competitor in violation of his agreement not to compete with Entegris, and being reminded of his

ongoing obligations, Nunes refused to disclose his post-employment plans to Entegris. In

particular, Nunes had the opportunity to disclose his post-employment plans on the Exit Form, and

expressly chose not to do so.

42.     Given Nunes' deep knowledge of Entegris' direct competition with Gelest under

the Lam Engagement, and his management of, and involvement with, projects where disclosure of

confidential information and trade secrets to Gelest poses a uniquely high risk of impacting

Entegris' business plans and strategies, Nunes's lack of transparency regarding his post-

employment plans is highly suspicious. Nunes would have been well aware of the conflict that his new position would create and Entegris' justifiable concerns about such a move.

43.     Entegris became even more concerned when it realized that Gelest had also failed to alert Entegris to Nunes' new role at Gelest, despite having the opportunity to do so during communications between leadership of the two competitors leading up to Entegris' discovery of Nunes' new role.

### 2. *Nunes' New Employment at a Direct Competitor Places Entegris Confidential Information and Trade Secrets at Risk of Disclosure and Use.*

44.     Nunes was a highly-compensated Director for Entegris, who, despite reminders regarding his restrictive covenants with Entegris, has accepted and is working in a position with a direct competitor in violation of his Entegris Restrictive Covenants Agreement.

45.     Given the extent of Nunes' exposure to Entegris' highly confidential projects and business strategies - particularly those implicating Entegris' direct competition with Gelest - Nunes' work for Gelest constitutes an immediate threat to Entegris, because he cannot help but use and disclose the trade secret and confidential information that he learned from his role with Entegris to assist Gelest in unfairly competing against Entegris.

46.     Nunes' actions pose an immediate threat of disclosure and misappropriation of Entegris' valuable trade secrets. As such, his actions constitute a violation of his nondisclosure obligations to Entegris, the Texas Uniform Trade Secrets Act ("TUTSA"), and the federal Defend Trade Secrets Act ("DTSA") insofar as Nunes' employment with Gelest will result in the inevitable disclosure of Entegris' confidential and proprietary information that qualifies as trade secrets without the express or implied consent of Entegris and to the detriment of Entegris' ability to compete in the market.

47.     Entegris' urgent concerns have been heightened by Nunes' utter failure to respond to Entegris' reminder about his noncompetition and nondisclosure obligations and attempt to resolve this matter short of litigation.

48.     Specifically, on Friday, March 10, 2022, Entegris sent a demand letter to Nunes through its outside counsel. A true and correct copy of the letter (the "Demand Letter") is attached hereto as <u>Exhibit D</u>. In the Demand Letter, Entegris reminded Nunes of his legal obligations to Entegris, identified its concerns regarding Nunes' violation of the noncompete restrictions in the Restrictive Covenants Agreement, asked Nunes terminate his employment with Gelest and to provide certain information and assurances necessary to help protect Entegris' information, and provided a copy of the Restrictive Covenants Agreement. *See* Ex. D. Entegris further warned that, in light of the possibility of litigation, Nunes' destruction of any relevant information would be considered spoliation of evidence and subject to sanctions. *See id.*, at p. 6.

49.     Entegris requested a response to the Demand Letter by 12:00 p.m. (ET) on March 15, 2023. *See* Ex. D, at p.5. As of the date of this filing, Nunes has provided ***no response whatsoever*** to the Demand Letter.

50.     Meanwhile, despite Entegris' clear warning against spoliation of evidence, upon information and belief, Nunes evidently removed his entire LinkedIn profile after receiving the Demand Letter. This constitutes further evidence that Nunes is attempting to cover his tracks and conceal any information about his new employment with Gelest from Entegris.

## III.     <u>Irreparable and Ongoing Harm to Entegris Caused by Nunes' Conduct</u>

51.     Entegris will be immediately harmed both irreparably and monetarily if Nunes continues to work for Gelest.

52.     Due to Nunes' extensive and repeated exposure to Entegris' trade secrets and Confidential Information, and given his leadership and client-facing role at a direct competitor,

Nunes use and/or disclosure of Entegris' trade secrets, Confidential Information, and customer goodwill in the course of his work at Gelest would be unavoidable and inevitable, thereby irreparably harming Entegris. Entegris has no adequate or other remedy at law for such acts and threatened acts.

53.     Given Nunes' refusal to comply with his contractual, common law, and statutory obligations, Entegris commenced this action to protect its trade secrets, Confidential Information, customer goodwill, and other legitimate business interests from irreparable and ongoing harm by Nunes.

## CAUSES OF ACTION

### Count One: Breach of Contract

54.     Entegris repeats and re-alleges the foregoing allegations as if fully set forth herein.

55.     On February 4, 2020, Entegris and Nunes entered into a valid and enforceable contract – the Restrictive Covenants Agreement – whereby Nunes agreed, *inter alia*, that during the duration of his employment by Entegris and for a period of one (1) year following the termination of his employment he would not be employed by a company which is or would be competitive, directly or indirectly, with the current business or planned business of Entegris, in those geographies where he had a material presence or influence during the last twenty four (24) months of his employment with Entegris. Ex. A, Addendum D, ¶¶ 2, 4.

56.     The Restrictive Covenant Agreement is governed by Texas law. Ex. A, ¶ 2.

57.     The noncompetition provision in the Restrictive Covenant Agreement is ancillary to an enforceable agreement in that Nunes was provided with increased access to Entegris' Confidential Information upon his signing of the Restrictive Covenant Agreement.

58.     The noncompetition provision in the Restrictive Covenant Agreement is enforceable because it is reasonable in time, geographical area, and the scope of the activity restrained.

59.     On January 25, 2019, Entegris and Nunes entered into a valid and enforceable contract – the Employee Agreement – whereby Nunes agreed, *inter alia*, that he would not disclose or make use of any trade secrets or other Confidential Information belonging to Entegris except as necessary to perform his duties as an employee of Entegris. Ex. B, ¶ 5.

60.     Nunes breached the Restrictive Covenant Agreement when he became employed by Gelest – a business that is directly competitive with Entegris.

61.     Nunes breached the Employee Agreement by accepting competitive employment with Gelest, which jeopardizes Entegris' trade secrets and Confidential Information. Entegris has reason to believe that Nunes will inevitably and imminently use and/or disclose Entegris' trade secrets and Confidential Information in violation of his Employee Agreement.

62.     Entegris has performed all of its obligations under the Restrictive Covenant Agreement and Employee Agreement.

63.     As a direct and proximate cause of Nunes' breaches of the Restrictive Covenant Agreement and Employee Agreement, Entegris has incurred damages. Accordingly, Entegris is entitled to judgment against Nunes for compensatory damages, reasonable and necessary attorneys' fees under Texas Civil Practice and Remedies Code § 38.001, and such other and further relief to which Entegris is entitled at law or in equity.

64.     Additionally, unless enjoined by this Court, Nunes' ongoing breaches of the Restrictive Covenant Agreement and Employee Agreement will cause irreparable harm to Entegris, and Entegris has no adequate or other remedy at law for such acts and threatened acts.

Entegris is entitled to injunctive relief to prevent Nunes from continuing to use Entegris' trade secret information and from continuing to work for Gelest during the term of the Restrictive Covenant Agreement.

## Count Two: Misappropriation of Trade Secrets under Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

65.     Entegris repeats and re-alleges the foregoing allegations as if fully set forth herein.

66.     In his position with Entegris, Nunes had access to trade secrets and other nonpublic Confidential Information that is of extraordinary value to Entegris.

67.     As set forth above, Entegris expended significant amounts of time and money to develop and now possess certain trade secret information, including without limitation the specific precursor chemicals offered by Entegris to its direct customers for use in the semiconductor manufacturing process; research and experimentation regarding next generation precursor chemicals for use in semiconductor manufacturing; details concerning the sourcing and inventory of chemicals and other materials for use in precursor chemicals; the processes used in the development, manufacture, and delivery of such precursor chemicals to Entegris' customers; the specific chemical components and processes involved in the creation of Entegris' other product offerings for use in memory chip manufacturing; testing capabilities; legal and commercial business strategies concerning new product development and market introduction; bills and statements of work with Entegris' customers, suppliers, and partners; work instructions; current and/or contemplated research and development; status and outlook of scientific technologies and other intellectual property under development; intellectual property developed but not yet patented; the target customer base for both existing technologies and products and new technologies and products under development; Entegris' plans to develop technologies and products for its target customer base; costs and margins associated with Entegris' products; and

contractual terms and pricing with customers and suppliers, that are critical to maintaining its competitive advantage and economic success in its semiconductor materials manufacturing line of business. This information constitutes "trade secrets" under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq*.

68.     Entegris has made concerted efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information through, among other measures, (a) requiring employees to sign employee and/or restrictive covenant agreements containing nondisclosure, noncompetition, and other restrictive covenants; (b) maintaining policies that are designed to identify and protect its Confidential Information and conducting training for employees on the importance of protecting Entegris' Confidential Information; (c) using passwords to protect its systems containing Confidential Information and prohibiting the sharing of passwords; (d) limiting access to Confidential Information to those employees who need to know the information in order to perform their roles for Entegris; (e) limiting visitor access and requiring visitors and third party partners to sign confidentiality agreements prior to visits to Entegris offices and prior to disclosure of Entegris' Confidential Information to them; (f) requiring employees to carry badges in order to access Entegris' facilities; (g) terminating employees' access to Entegris' systems immediately upon termination or, in certain circumstances, upon their notice of resignation and requiring departing employees to submit written confirmation of their confidentiality obligations; and (h) implementing technological and other physical barriers and other mechanisms that prevent the unauthorized access to its Confidential Information.

69.     Entegris' trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other companies or individuals (in Entegris' industry or elsewhere) who could obtain an advantage from it. Entegris provided

Nunes access to its trade secret information for the limited purpose of his use of this information during the scope of his employment for Entegris.

70.     This information is used in interstate commerce by Entegris – a Delaware entity with its principal place of business in Massachusetts – which utilizes this trade secret information in its businesses in Massachusetts and Texas, other states within the United States, and internationally.

71.     Without informing Entegris, Nunes has accepted a position with Entegris' direct competitor, Gelest, in violation of his Restrictive Covenant Agreement. Nunes' position with Gelest is one in which Nunes' disclosure and/or use of Entegris' trade secrets and Confidential Information would be unavoidable and inevitable, thereby constituting misappropriation of Entegris' trade secrets in violation of the DTSA.

72.     Unless enjoined by this Court, Nunes' misappropriation of Entegris' trade secrets will cause significant irreparable harm to Entegris, and Entegris has no adequate or other remedy at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as Entegris' trade secret information, have been misappropriated. As such, Entegris is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

73.     As a direct, proximate, and foreseeable result of Nunes' misappropriation of Entegris' trade secrets, Entegris has been damaged in an amount to be determined at trial.

**Count Three: Misappropriation of Trade Secrets under Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A**

74.     Entegris repeats and re-alleges the foregoing allegations as if fully set forth herein.

75.     In his position with Entegris, Nunes had access to trade secrets and other nonpublic Confidential Information that is of extraordinary value to Entegris.

ORIGINAL COMPLAINT                                                          Page 20

76.     As set forth above, Entegris expended significant amounts of time and money to develop and now possesses certain trade secret information, including without limitation the specific precursor chemicals offered by Entegris to its direct customers for use in the semiconductor manufacturing process; research and experimentation regarding next generation precursor chemicals for use in semiconductor manufacturing; details concerning the sourcing and inventory of chemicals and other materials for use in precursor chemicals; the processes used in the development, manufacture, and delivery of such precursor chemicals to Entegris' customers; the specific chemical components and processes involved in the creation of Entegris' other product offerings for use in memory chip manufacturing; testing capabilities; legal and commercial business strategies concerning new product development and market introduction; bills and statements of work with Entegris' customers, suppliers, and partners; work instructions; current and/or contemplated research and development; status and outlook of scientific technologies and other intellectual property under development; intellectual property developed but not yet patented; the target customer base for both existing technologies and products and new technologies and products under development; Entegris' plans to develop technologies and products for its target customer base; costs and margins associated with Entegris' products; and contractual terms and pricing with customers and suppliers, that are critical to maintaining its competitive advantage and economic success in its semiconductor materials manufacturing line of business. This information constitutes "trade secrets" under the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A.

77.     Entegris has made concerted efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information through, among other measures, (a) requiring employees to sign employee and/or restrictive covenant agreements

containing nondisclosure, noncompetition, and other restrictive covenants; (b) maintaining policies that are designed to identify and protect its Confidential Information and conducting training for employees on the importance of protecting Entegris' Confidential Information; (c) using passwords to protect its systems containing Confidential Information and prohibiting the sharing of passwords; (d) limiting access to Confidential Information to those employees who need to know the information in order to perform their roles for Entegris; (e) limiting visitor access and requiring visitors and third party partners to sign confidentiality agreements prior to visits to Entegris offices and prior to disclosure of Entegris' Confidential Information to them; (f) requiring employees to carry badges in order to access Entegris' facilities; (g) terminating employees' access to Entegris' systems immediately upon termination or, in certain circumstances, upon their notice of resignation and requiring departing employees to submit written confirmation of their confidentiality obligations; and (h) implementing technological and other physical barriers and other mechanisms that prevent the unauthorized access to its Confidential Information.

78.    Nunes has accepted a position with Gelest in violation of his Restrictive Covenant Agreement. Nunes' position with Gelest is one in which it is not possible for Nunes not to make use of the trade secrets and Confidential Information that he learned from his role at Entegris, thereby misappropriating Entegris' trade secrets in violation of the TUTSA.

79.    Unless enjoined by this Court, Nunes' misappropriation of Entegris' trade secrets will cause significant irreparable harm to Entegris, and Entegris has no adequate or other remedy at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as Entegris' trade secret information, have been misappropriated. As such, Entegris is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

80.     As a direct, proximate, and foreseeable result of Nunes' misappropriation of Entegris' trade secrets, Entegris has been damaged in an amount to be determined at trial.

## ATTORNEYS' FEES AND COSTS

Entegris seeks reasonable and necessary attorneys' fees and costs against Nunes under Texas Civil Practice and Remedies Code § 38.001, DTSA, and TUTSA

## JURY DEMAND

Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

Wherefore, Entegris requests that judgment be entered in its favor and against Nunes as follows:

a.     Upon application, a temporary restraining order, a preliminary injunction, and a permanent injunction:

   i.     Enjoining Nunes from breaching or failing to comply with the terms of his Restrictive Covenant Agreement and Employee Agreement, including the nondisclosure (confidentiality) and noncompetition provisions contained therein, during the time period of the noncompete provisions;

   ii.     Enjoining Nunes from continuing to be employed by Gelest; and

   iii.     Enjoining Nunes from accessing, using, disclosing, distributing, disseminating, or discussing Entegris' trade secret information and other Confidential Information.

b.     For compensatory damages and any other damages to which Entegris is entitled in an amount to be shown at trial;

c.     For Entegris' attorneys' fees;

d.      For pre- and post-judgment interest and costs of suit incurred herein; and

e.      For such further relief as the Court finds just and proper.[1]


Date: March 16, 2023                                    Respectfully submitted,

                                                        /s/ Adam H. Sencenbaugh
                                                        Adam H. Sencenbaugh
                                                        Tex. Bar 24060584
                                                        Adam.Sencenbaugh@haynesboone.com
                                                        Henson Adams
                                                        Tex. Bar 24101418
                                                        Henson.Adams@haynesboone.com
                                                        **HAYNES AND BOONE, LLP**
                                                        600 Congress Avenue, Suite 1300
                                                        Austin, Texas 78701
                                                        Telephone: (512) 867-8400
                                                        Facsimile: (512) 867-8470

                                                        Russell Beck (*Pro Hac Vice to be Pending*)
                                                        Mass. Bar 561031
                                                        rbeck@beckreed.com
                                                        Stephen Riden (*Pro Hac Vice to be Pending*)
                                                        Mass. Bar 644451
                                                        sriden@beckreed.com
                                                        **BECK REED RIDEN LLP**
                                                        155 Federal Street, Suite 1302
                                                        Boston, Massachusetts 02110
                                                        Telephone: (617) 500-8660
                                                        Facsimile: (617) 500-8665

                                                        **COUNSEL FOR ENTEGRIS, INC.**

---

[1] In the alternative, if the Court finds that noncompete covenant contained in the Restrictive Covenants Agreement is not reasonable in time, geographic area, or scope of activity, Entegris requests that the Court modify the Restrictive Covenants Agreement where necessary to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interests of Entegris and enforce the Restrictive Covenants Agreement as reformed. *See*, TEX. BUS. & COM. CODE § 15.51(c).